[No. 4485–1.  Division One.  April 11, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL JESSE COATES, *Appellant*.

416

*Williams, Lanza, Kastner & Gibbs, Gerald A. Palm, Snure, Gorham & Varnell,* and *James B. Gorham,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark* and *Ralph Maimon, Deputies,* for respondent.

WILLIAMS, J.—This is an appeal from a conviction of two counts of negligent homicide entered after a nonjury trial. We affirm.

The facts are these. At about 1 a.m. on June 21, 1975, Randall Jesse Coates was driving his Chevrolet van westbound on Highway 522 near Bothell. Coates and his two passengers, Margaret Nolan and Ronnie Chevalier, were coming from a wedding reception in Kirkland where Coates had consumed alcoholic beverages, including champagne and bourbon. On the Wayne Curve portion of Highway 522, the Coates vehicle suddenly cut diagonally across the oncoming lanes of traffic and collided head on with a Volkswagen occupied by J. W. and Sylvia Ann Goldblatt.

The Goldblatts both died from injuries sustained in the collision.

Officer Van Lierop of the Bothell Police Department, who arrived at the scene shortly after the accident, detected an odor of alcohol on the person of Coates and found four bottles of beer in his van. A Breathalyzer test given to Coates some 2 1/2 hours after the accident revealed .10 percent blood alcohol by weight.

The court found that just prior to veering across the center line, the Coates vehicle was traveling in excess of 45 m.p.h. in a posted 35 m.p.h. zone. The court further found that the excessive rate of speed and the effects on Coates' ability to drive produced by intoxicating liquor were the direct cause of the collision and the deaths.

Coates' assignments of error primarily concern the sufficiency of evidence that Coates violated RCW 46.61.520 which, at that time, provided in part:

(1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs as defined in chapter 69.50 RCW, Uniform Controlled Substances Act, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle.

Coates contends that he was denied due process of law by the use of the following statute:

(2) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of his blood, breath or other bodily substance shall give rise to the following presumptions:

. . .

(c) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that he was under the influence of intoxicating liquor.

RCW 46.61.506 in part. Coates argues that the presumption allows the State to shift the burden of proof and force Coates to disprove an essential element of the crime of negligent homicide.

■ In our legal system, the burden is always upon the prosecution to establish every element of the crime charged by proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). As an outgrowth of this fundamental principle, an evidentiary presumption which is used by the prosecution to aid in establishing any of the elements of a crime must survive scrutiny under three separate tests, each of which is based upon protection of the defendant's right to due process of law.

First, while a presumption may still be employed for the purpose of shifting the initial burden of producing evidence with regard to an element of the crime charged, it may not operate so as to alter the ultimate burden of persuasion by proof beyond a reasonable doubt. This burden must, at all times, remain with the prosecution. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976).

Second, the State must establish that a presumption which it seeks to employ for the limited purpose permissible under *Mullaney* meets the test established by this court in *State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974) and *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976). We there held a presumption may only be used to establish an element of a criminal offense when it is established that the fact presumed follows from the facts proven in support thereof beyond a reasonable doubt. *See Turner v. United States,* 396 U.S. 398, 24 L. Ed. 2d 610, 90 S. Ct. 642 (1970); *Barnes v. United States,* 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357 (1973).

Finally, the instruction presenting a presumption to the jury which is valid under the two previous tests must adequately explain the operation of the presumption in

accordance with the standards set forth in *State v. Person*, 56 Wn.2d 283, 352 P.2d 189, 81 A.L.R.2d 1088 (1960) and reaffirmed in *State v. Odom, supra.*

*State v. Roberts,* 88 Wn.2d 337, 340–41, 562 P.2d 1259 (1977).

At trial, the state toxicologist, Dr. Ted A. Loomis, testified that his experiments showed a marked impairment in judgment, reasoning, vision, and hearing in a person with .10 percent blood–alcohol concentration, along with a 25 percent decrease in "normal reflex activity." The .10 percent presumption is based on the Uniform Vehicle Code § 11, 902(b), and is endorsed by the National Safety Council. In *Commonwealth v. DiFrancesco,* 458 Pa. 188, 198, 329 A.2d 204 (1974), the Supreme Court of Pennsylvania, in affirming that state's .10 percent presumption, stated:

> In its deliberations prior to enacting section 624.1, the legislature considered evidence demonstrating that, in virtually all drivers, driving ability is significantly affected by a blood–alcohol content of 0.10 percent or more.

(Footnote omitted.)

In deciding whether a presumed fact follows a proven fact beyond a reasonable doubt,

> the court may utilize common experience, as well as empirical data and evidence which establishes a factual basis for the presumption. *State v. Alcantara* [87 Wn.2d 393, 552 P.2d 1049 (1976)].

*State v. Roberts, supra* at 343.

■ We conclude that the presumed fact of driving under the influence of intoxicating liquor follows beyond a reasonable doubt from the proven fact of a .10 percent blood–alcohol concentration, and RCW 46.61.506(2)(c) does not relieve the State of its burden of proof. The presumption and the other evidence considered by the trial court presented a question of fact as to whether Coates was driving under the influence of or affected by intoxicating liquor.

Coates also challenges the sufficiency of the evidence supporting the court's conclusion that he "while discharging his duties as operator of that vehicle did operate it with disregard for the safety of others." *State v. Eike,* 72 Wn.2d 760, 765–66, 435 P.2d 680 (1967), defines "disregard" in RCW 46.61.520 as

an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term "negligence."

Coates argues that evidence of speed alone does not support the conclusion that he disregarded the safety of others. There is other evidence of negligence: the left rear tire of Coates' van was considerably smaller than the other three tires. Coates testified:

Q Did the change in tires have any effect on your driving?

A Yeah, it had some.

Q Would you say it was something that you weren't necessarily used to?

A Oh, in a way.

Q What kind of effect did it have on your driving, did it pull one way or another?

A If you had to cut real sharp the tire would, you know—it had a weaker sidewall than the others did.

Q And what would that do?

A It caused the van to sway more. It would be like taking your shocks completely off of your rear end.

Coates' awareness of the small tire and its effect on his ability to operate the van, combined with excessive speed and his use of intoxicating liquor, constitutes substantial evidence from which the court could reasonably conclude that Coates operated a vehicle with "disregard for the safety of others."

The remaining assignments of error are insubstantial.

The judgment is affirmed.

SWANSON and ANDERSEN, JJ., concur.

Petition for rehearing denied August 8, 1977.

Review denied by Supreme Court March 17, 1978.